[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter came before the court on September 26, 2001 as a hearing in damages upon default pursuant to Practice Book § 17-34. The plaintiff is the administrator of the estate of Mathew Kosbob, deceased,[1] and the two defaulted defendants against whom judgment is sought are Jarrell Crawford and Anthony Bellocchio (collectively "the defendants").
The action arises out of an incident which occurred on July 28, 1995 when the defendants, in concert with two other youths, viciously assaulted the decedent and inflicted upon him serious injuries which eventually caused his death on November 23, 1998. Although given adequate notice of the hearing in damages, neither defendant appeared at the hearing either personally or by counsel, and neither offered any defense to the damages claimed.
On the day of the incident, which occurred in an elementary school parking lot in Stamford, the attackers forced the decedent to his knees and repeatedly struck and kicked him, and while he lay on the ground, he continued to be beaten and kicked, and was struck on his head with a 40 ounce beer bottle. The injuries suffered by Mathew from this merciless meeting, can only be described as unfathomable. He was confined to either a hospital or a rehabilitation facility from the day of the injury to the day of his death. Initially admitted to the trauma room at the Stamford Hospital, Mathew was neither conscious nor breathing on his own. His condition was diagnosed as critical and he was in a deep coma. By September, 1995 he was transported to Gaylord Hospital where he remained deeply comatose. He was treated for infections and dehydration after returning to Stamford Hospital. He was then transferred to the Rehabilitation Hospital of Connecticut at Mount Sinai in Hartford. In CT Page 13986 October, 1995 he underwent lumbar surgery. His body began to twist in spasms which were severe and uncontrollable. In November and December, 1995, the plaintiff's decedent began to emerge from his coma, but contracted vein infections and blood clots. He received heavy antibiotics including Botulinum toxin injections in order to kill nerve endings and relieve his pain. In January, 1996, surgery was performed, unsuccessfully, to cut and lengthen tendons. He began experiencing abdominal pain due to his contracting chronic pancreatitis.
In February and March, 1996, Mathew continued to experience pain from his surgeries and his abdomen, and suffered from high fever. He was plagued by bed sores and skin infections. From April through December, 1996, the patient developed urinary tract infection, trachea infection, constant vomiting, and rectal bleeding necessitating a transfusion. A severe blood infection required chemotherapy, and he lived under a cooling blanket for his fever. He remained critically ill with recurring chronic pancreatitis and urinary infections. He suffered chest congestion, blood clots and developed heart problems.
In January through March, 1997, surgery was performed to reconstruct his small intestine to the outside. It was discovered that his intestinal tract was functioning in reverse. He was administered further chemotherapy and was fed intravenously. From April through August, 1997, there were various surgeries, and recurring loss of access for his intravenous feeding.
In September through December, 1997, his antibiotics were no longer keeping pace with his infections and fevers. He developed pneumonia and a partial collapse of the lung. He continued to suffer from abdominal problems, vomiting, lung congestion, skin breakdown and chronic pancreatitis. Morphine was used constantly for his pain. In March, 1998, doctors operated twice on his abdomen for complications. In April, there were two more surgeries on his stomach. Morphine doses were now increased for the increasing pain. The patient began to gain weight for no known reason. He underwent five hours of surgery for his externally ruptured small intestine and spent three weeks in the critical care unit at St. Francis Hospital.
In June 23, 1998 Mathew was returned to the rehabilitation hospital where he received various antibiotics for infection, and where heavy morphine doses were continued. During this period, Mathew cried sixteen to twenty hours a day from his pain. In October, 1998, the decedent's body experienced uncontrolled cell expansion and he gained over one hundred pounds. He was transferred back to St. Francis Hospital for the replacement of his last intravenous line access. His stomach was useless at this time. In November, 1998, Mathew's condition continued to CT Page 13987 decline, and finally, his breathing became more difficult and his last intravenous line became infected. With no available treatment left, the decedent died on November 23, 1998.
Medical costs for the care and treatment of the decedent exceeded 2.2 million dollars; however, the plaintiffs seek here only $100,000 for said expenses. Other economic damages are claimed in the form of Mathew's loss of earning capacity resulting from his injuries and death. A report by two economists, Dr. Arthur Wright and Dr. Francis Ahking, was admitted into evidence. This report sought to demonstrate the net loss earning capacity for the decedent, at present value as of July 1, 2001, to be $2,057,958. The funeral expenses paid were $1,919. The individual plaintiffs, the parents of Mathew, claim travel and hotel expenses of $180,000, but the court does not find any basis in law for the recovery of such expenses.
The plaintiffs also claim non-economic damages on behalf of the decedent, which the court in this case finds to be substantial. Although Mathew was comatose from July 28, 1995, the day of his injury, he regained consciousness in November, 1995 and remained so until his death on November 23, 1998. For most of those three years, Mathew Kosbob experienced severe pain and suffering, much of which may be described as excruciating. Because he could not speak, he formed silent screams, in which his mouth was open, his face contorted, but emitting no sound.
As further non-economic damages, the plaintiff's decedent is also entitled to compensation for his loss of enjoyment of life's activities caused by his demise. Eighteen years old at his death, he had a life expectancy of 55.5 years,
Pursuant to Connecticut General Statutes § 52-555, an administrator of the decedent's estate may bring an action for injuries resulting in death and may recover from the parties legally at fault "just damages," together with the cost of reasonable necessary medical, hospital and nursing services, and including funeral expenses.
In this case, the court awards just damages as follows:
 Economic damages $2,159,877.00 Non-economic damages $4,000,000.00
Total damages $6,159,877.00
So Ordered.
 ___________________ D'ANDREA, J.T.R.
CT Page 13988